In the District Court of the United States
For the District of South Carolina
BEAUFORT DIVISION

| | | |
|---|---|---|
| Robert Lee Green, #162479, | ) | Civil Action No. 9:07-0028-CMC-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Anthony Padula, Warden of Lee | ) | |
| Correctional Institution (LCI); | ) | |
| Margaret Bell, Assistant Warden | ) | |
| of LCI, Mark Price, Major of LCI; | ) | |
| Donald Keeney, Captain of LCI; | ) | |
| Ms. Sellers-McCormick, Disciplinary | ) | |
| Hearing Officer of LCI; Ms. D. Mitchell, | ) | |
| Inmate Grievance Coordinator of LCI; | ) | |
| W. Brinson, Lieutenant of LCI; | ) | |
| John Doe, Officer at Holding Cell at LCI, | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

The Plaintiff, Robert Lee Green ("Plaintiff" or "Green"), was incarcerated in the South

Carolina Department of Correction's Lee Correctional Institution ("LCI") at the time of the

incident leading to this action. He has filed this action pursuant to 42 U.S.C. § 1983 [1] against the

---

[1]    42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any
statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of
Columbia, subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress, except that in any
action brought against a judicial officer for an act or omission taken in such officer's
judicial capacity, injunctive relief shall not be granted unless a declaratory decree was
violated or declaratory relief was unavailable.

above-named Defendants, Anthony Padula, Warden of LCI ("Padula"), Margaret Bell, Ass.
Warden of LCI ("Bell"), Mark Price, Major of LCI ("Price"), Donald Keeney, Captain of LCI
("Keeney"), Ms. Sellers- McCormick, Disciplinary Hearing Officer of LCI ("Sellers-
McCormick"), Ms. D. Mitchell, Inmate Grievance Coordinator of LCI ("Mitchell"), W. Brinson,
Lieutenant of LCI ("Brinson"), and John Doe, officer at holding cell, at LCI ("John Doe"),
alleging he was "mentally anguished" as a result of the Defendants' investigation into his
possession of illegal drugs during his incarceration. The Plaintiff also claims that his due process
rights were violated in connection with his grievances pertaining to the investigation/grievance
procedure, in violation of his civil rights pursuant to 42 U.S.C. § 1983, and alleges pendent state
law claims for negligence and "cover-up." The Plaintiff seeks damages and injunctive relief.

This case was automatically referred to the undersigned United States Magistrate Judge
for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections
636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Defendants have
filed a motion for summary judgment. [33] As this is a dispositive motion, this Report and
Recommendation is entered for review by the District Court.



## II.  THE *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction.
*Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976);
*Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon
v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

Under established local procedure in this judicial district, a careful review has been made of the

*pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective

Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has

been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992);

*Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim*

*v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*,

516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

      *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.

*Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se*

complaint nonetheless may be subject to summary dismissal. The mandated liberal construction

afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a

valid claim on which the plaintiff could prevail, it should do so, but a district court may not

rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128



(10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him

(*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely

presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert.*

*denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean

that the court can ignore a clear failure in the pleading to allege facts which set forth a claim

currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d

594 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).

Such is the case with the present complaint.

## III.  BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff filed his complaint on December 29, 2006, alleging that on August 5, 2005, he was suspected of hiding drugs on/in his person and was strip searched and confined in to a "dry cell" (strip cell) in the Lee CI Special Management Unit ("SMU").[2]  Plaintiff alleges he was handcuffed to a holding cell window for two and one-half hours, and denied food for several days, in violation of the Eighth Amendment.  No hidden drugs were found on/in Plaintiff's person, but the results of his drug test were positive.  Plaintiff claims that he had not used drugs, but was punished prior to a hearing in an effort to force him to tell Lee CI officials where he obtained the drugs, or who was using them.

On January 19, 2007, the undersigned issued an order authorizing service of process by the clerk.  [7]  On February 28, 2007, counsel for the above-captioned Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that "the Plaintiff undeniably does not allege in his Complaint that he has suffered any type of physical injury as a result of the alleged acts, conduct and/or omissions of the Defendants and/or that any alleged injury sustained by him was anything more than *de minimis*."[3]  On March 5, 2007, the undersigned issued a Report and Recommendation which recommended that the Defendants' motion to dismiss be denied, reasoning that the Plaintiff's *pro se* complaint, liberally construed,

---

[2]     Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his Complaint.  *See* Order filed on January 19, 2007.  [7]

[3]     *See* Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [11] at p. 1.

set forth allegations sufficient to survive the Defendants' motion to dismiss. [12]  The

Defendants timely filed Objections to the Report and Recommendations.  [14]

   The District Court began its analysis by noting that the Plaintiff sought compensatory

damages from Defendants Price, Keeney, Brinson, and "John Doe" for "personal humiliation and

mental anguish."[4]  Plaintiff also sought punitive damages against Defendant Price, Keeney,

Brinson, "John Doe," Padula, Bell, Sellers-McCormick, and Mitchell.  Plaintiff further sought

the removal of Defendants Price, Keeney, and Brinson from their positions with the South

Carolina Department of Corrections.  Plaintiff's last claim for relief asks for "whatever the . . .

[c]ourt grant[s] in this relief to be just and fair as it may appear on behalf of the [P]laintiff is

entitled."[5]  The District Court, liberally construing the Plaintiff's complaint, interpreted that last

sentence to be a request for nominal damages.[6]  Relying on 42 U.S.C. § 1997e(e), which states

that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other

correctional facility, for mental or emotional injury suffered while in custody without a prior

showing of physical injury[,]" the District Court held that Plaintiff is not entitled to the recovery

of compensatory damages, as he had failed to allege any "prior" physical injury.[7]  With respect to

punitive damages, the District Court noted:

   [S]everal circuits have determined that § 1997e(e) does not, in most cases, preclude

---

[4]      Complaint [1] at p. 13.

[5]      Complaint [1] at p. 14.

[6]      See Opinion and Order [16] at p. 2, citing Mitchell v. Horn, 318 F.3d 523, 533 n.8 (3rd Cir. 2003).

[7]      See Opinion and Order [16] at pp. 2-3.

recovery of punitive damages. *See Royal v. Kautzky*, 375 F.3d 720 (8th Cir. 2004); *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001); *Allah v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2000). Other circuits have found, however, that when punitive damages are claimed for emotional or mental injuries, such is precluded by § 1997e(e). *See Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998) (finding that "much if not all of Congress's evident intent would be thwarted if prisoners could surmount § 1997e(e) simply by adding a claim for punitive damages and an assertion that defendant acted maliciously."). The Fourth Circuit has not issued a published opinion on this issue. (Footnote omitted).

The court finds itself in agreement with the language of *Allah v. Al-Hafeez*, finding that "to the extent that [Plaintiff's] punitive damages claims stem solely from the violation of his [constitutional] rights, and not from any emotional or mental distress suffered therefrom, those claims are not claims brought 'for mental or emotional injury suffered' and are not barred by § 1997e(e)." *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000).[8]

Plaintiff's "request" for nominal damages also does not appear to be precluded by 42 U.S.C. § 1997(e). The Second, Third, Seventh, Ninth, Tenth, and Eleventh Circuits have determined that § 1997e(e) does not preclude a prisoner from seeking nominal damages. *See Hughes v. Lott*, 350 F.3d 1157 (11th Cir. 2003); *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003); *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002); *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002); *Searles v. Van Bebber*, 251 F.3d 869, 878-79 (10th Cir. 2001). Again, the Fourth Circuit has not addressed this circumstance in a published opinion.[9]

"Interpreting the phrase 'no action shall be brought' to require dismissal of the entire case under . . . § 1997e(e) would contravene our normal rules of statutory construction." *Jones v. Bock*, 549 U.S. ___, 127 S.Ct. 910, 925 (Jan. 22, 2007). Therefore, to the extent that Plaintiff's complaint seeks nominal and punitive damages for the violation of his constitutional rights, he may proceed in this court. . . . However, Plaintiff's claims for compensatory damages are stricken and dismissed.[10]



The District Court denied the Defendants' motion to dismiss, but held that the Plaintiff's claims for compensatory damages were stricken and dismissed, and re-referred the matter to the undersigned for further pretrial proceedings. [16] Thereafter, on March 26, 2007, the Defendants filed an answer, asserting a general denial and various affirmative defenses. [21]

---

[8]    Opinion and Order [16] at p. 3.

[9]    Opinion and Order [16] at p. 4.

[10]   Opinion and Order [16] at p. 4.

On July 16, 2007, the Defendants filed a motion for summary judgment, a supporting memorandum, and various exhibits. [33] On July 18, 2007, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the Defendants' motion, the summary dismissal procedure and the possible consequences if Plaintiff failed to adequately respond to the Defendants' motion within thirty-four (34) days. [35] After the Plaintiff elected not to respond to the Defendants' motion, the undersigned granted the Plaintiff an additional twenty days to file a response. [38] Thereafter, the Plaintiff filed his response in opposition to the Defendants' motion to for summary judgment on August 27, 2007. [40]

## IV. SUMMARY JUDGMENT STANDARD

The analysis of the Defendants' motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 323; Fed.R.Civ.P. 56(c).



Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence. *Ross*, 759 F.3d at 364. Put another way, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir. 1987). Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167 (4th Cir. 1988). Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## V. DISCUSSION

### A. Exhaustion of Administrative Remedies.

As a threshold matter, the court must address whether the Plaintiff has exhausted his administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court recently observed:



> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances,

> corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25, (2002) (citations and quotations omitted). The Court

held that the PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong. *Id., see also Booth v. Churner*, 531 U.S. 956, 149 L.Ed.2d

958, 121 S.Ct. 1819 (2001)(unanimous decision: PLRA requires administrative exhaustion even

if grievance procedure does not allow monetary damages and prisoner seeks only monetary

damages, so long as grievance tribunal has authority to take some responsive action).

In orders filed on May 9, 1996, this court certified that the inmate grievance procedure

established by the South Carolina Department of Corrections met the standards required by 42

U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No.

3:96-MC-84-2 (D.S.C., May 9, 1996). In order to exhaust the SCDC administrative remedy, an

inmate must fill out a Form 10-5 (Step 1 Grievance form) about the matters raised in his

grievance and give the form to the Institutional Inmate Grievance Coordinator within **fifteen (15)**



days of the alleged incident of which the inmate complains. The grievance coordinator has **nine**

**(9)** days from the time the grievance is presented by the inmate to put it into SCDC's automated

system. Once the grievance is properly entered into the SCDC automated system, the Warden

should then respond to the Step 1 grievance in writing within **forty (40)** days. If the inmate is

not satisfied with the Warden's response, then, within **five (5)** days, he or she must file an appeal

of the Step 1 grievance response by filing a Form 10-5a (Step 2 Appeal) to the Responsible

Official with the Inmate Grievance Coordinator.  A responsible SCDC official will then have

**sixty (60)** days to respond to the Step 2 grievance.  The decision of the "responsible official" who

answers Step 2 is the Department's final response in the matter.  Even if SCDC fails to respond

to the plaintiff's Step 1 grievance and, as a result, leaves the plaintiff with no decision to appeal

to Step 2, the plaintiff must still refrain from filing suit in federal court until all time periods for

both steps to be completed have expired.  Once the full period for prison responses has run

without the issuance of any response, it is generally held that the inmate has substantially

complied with the § 1997e exhaustion requirement.  *See, e.g., Boyd v. Corrections Corp. of

America*, 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the . . . other circuits that

have considered this issue, we conclude that administrative remedies are exhausted when prison

officials fail to timely respond to a properly filed grievance), *cert. denied*, 544 U.S. 920, 161

L.Ed.2d 477, 125 S.Ct. 1639 (2005); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.

2002)("agree[ing with other circuits] that the failure to respond to a grievance within the time



limits contained in the grievance policy renders an administrative remedy unavailable"); *Lewis v.

Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (stating that prison's failure timely to respond

renders administrative remedies unavailable); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir.

2001) (holding that defendants failed to prove non-exhaustion where they presented no evidence

to refute plaintiff's contention that he could not pursue grievance further after warden did not

respond to his grievance); and *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (holding

that "available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired"), *cert. denied*, 526 U.S. 1133, 143 L.Ed.2d 1012, 119 S.Ct. 1809 (1999). Under such circumstances, an inmate of the South Carolina Department of Corrections who files a Step 1 grievance but receives no response thereto must wait at least 114 days (approximately four (4) months) from the time he or she files a Step 1 grievance before it may be said that he or she has exhausted "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Thus, it appears that so long as the inmate waits the full 114 days established for the running of the entire process through Step 2, he or she may then file suit in federal court even though he or she has not formally completed Step 2. This is true because the SCDC policy states, in pertinent part, "[i]f, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal." Section 14(e) of the SCDC policy. *See Boyd; Jernigan; Lewis; Foulk;* and *Underwood.* The 114-day period is determined by giving the maximum amount of time provided in the SCDC policy for each step in the process and assuming that no extensions of time are sought and the SCDC fails to timely respond to the Step 1 grievance within the forty (40) days allowed or fails to request a specific continuance of the established time to respond by SCDC officials at any point during the process. *See* Section 16 of the SCDC Policy, which provides that all grievances are to be disposed of within 105 days from the entry of the Step 1 grievance. Since the institutional grievance coordinator has nine (9) days to enter the Step 1 grievance, the sum of the nine-day entry period and the 105-day period set forth in Section



16 is 114 days.

In the present case, the Plaintiff alleged his grievances were filed on August 25, 2005 and

on September 10, 2005; each was returned unprocessed. As the time for the resolution of those

grievances expired prior to the date he filed this action, on December 29, 2006, the Plaintiff has

exhausted his administrative remedies, and the court will turn to the merits of the case.

### B. The Plaintiff cannot recover for the injuries he has alleged.

There is no federal constitutional right to be free from emotional distress, psychological

stress, or mental anguish, and, hence, there is no liability under Section 1983 regarding such

claims. *See Grandstaff v. City of Borger*, 767 F.2d 161, 172 (5th Cir. 1985), *cert. denied*, 480

U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). The Prison Litigation Reform Act of 1996

("PLRA") provides in part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other
> correctional facility for mental or emotional injury suffered while in custody without a prior
> showing of physical injury.[11]

Thus, pursuant to 42 U.S.C. § 1997e(e) no recovery of monetary damages is allowed for mental

or emotional injury. *Id. see also Thompson v. Adams*, 2006 WL 3140334 (D.S.C. Oct. 27, 2006)

(holding that the Prison Litigation Reform Act requires proof of "physical injury" arising from

---

[11]    *See* 42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth
Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be
more than de minimis, but need not be significant. *Siglar v. Hightower*, 112 F.3d 191 (5th
Cir. 1997) (concluding that a sore, bruised ear lasting for three days was de minimis and
failed to meet the requisite physical injury to support a claim of emotional or mental
suffering); *see also Zehner v. Trigg*, 952 F.Supp. 1318 (S.D.Ind. 1997) (exposure to
asbestos not physical injury necessary to support claim for mental or emotional injury
under the PLRA), *aff'd*, 133 F.3d 459 (7th Cir. 1997).

the allegedly unconstitutional condition and citing *Mitchell v. Horn*, 318 F.3d 523, 535 (3rd Cir

2003, which noted that Section § 1997e's "injury" provision requires more than *de minimis*

injury). Case law prior to the adoption of the PLRA has similarly held that there is no federal

constitutional right to be free from emotional distress, psychological stress, or mental anguish.

*Id.* Hence, there can be no liability under § 1983 for any such claims. *Id.; see also Lopez v.

SCDC*, 2007 WL 2021875 (D.S.C. July 6, 2007).

In this case, Plaintiff does not seek damages for any type of physical injury, nor does he

contend that he is entitled to damages for any injuries which are more than *de minimis*. To the

contrary, Plaintiff's Complaint seeks damages only for "humiliation" and "mental anguish".[12]

Without question, these alleged damages, even if true, are specifically precluded by the PLRA.

Absent the most extraordinary circumstances, a Plaintiff cannot prevail on a claim brought

pursuant to 42 U.S.C. § 1983 if his injury is *de minimis. Norman v. Taylor*, 25 F.3d 1259, 1263

(4th Cir. 1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). Because

the Plaintiff alleges only that he suffered mental and/or emotional injuries, it is recommended

that the Defendants be granted summary judgment.

### C. Plaintiff has not set forth sufficient evidence of a viable Eighth Amendment claim.

Next, to the extent that Plaintiff attempts to assert a claim for cruel and unusual

punishment in violation of the Eighth Amendment to the United States Constitution, Plaintiff has

failed to establish any such claims against these Defendants.

---

[12]    Complaint [1] at p. 13.

Although prisoners retain many constitutional rights, it has been recognized that incarceration inherently limits certain constitutional rights of prisoners. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The United States Supreme Court has held that prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment also prohibits the use of cruel and unusual punishment, including the "the unnecessary and wanton infliction of pain" through the use of excessive force. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

The Plaintiff appears to complain that his being handcuffed to a bar inside a holding cell for two and one-half hours constituted cruel and unusual punishment in violation of the Eighth Amendment. In order to prove an excessive force claim, the Plaintiff must meet both an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Norman v. Taylor*, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), cert. denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995) (*quoting Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Again, "absent the most extraordinary circumstances" an individual who suffers only de minimis pain or injuries cannot prevail on an Eighth Amendment excessive force claim. *Norman*, 25 F.3d at 1263. Subjectively, the plaintiff must



Page 14 of 25

show that the "prison officials maliciously and sadistically used force to cause harm." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995; *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

However, the Plaintiff has not set forth any allegation of any physical injury. To the contrary, Plaintiff's prison medical record fails to reveal any complaints or injuries as a result of the incidents of which he complains.[13] "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler v. Waters*, 989 F.2d 1375,1381 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

In the present case, Plaintiff's prison medical file reveals that the Plaintiff was seen on multiple occasions for numerous medical maladies, including mental health issues, increased blood pressure, ethanol abuse, cocaine abuse, and cannabis abuse.[14] However, the Plaintiff did not request, nor was he treated for, any medical issues relating to the incidents complained of.[15] No genuine issue of material fact exists in this regard. The Plaintiff has not shown any injury from the incidents that are set forth in his complaint, and this leads the court to conclude that no such injuries exist. The Plaintiff has not claimed he suffered any physical injury, and he has not presented any evidence that he ever was injured. In sum, Plaintiff has not shown that he has suffered any type of injury as a result of the matters alleged in his Complaint. The Plaintiff's

---

[13]    See Plaintiff's medical records, attached to Defendants' Memorandum.

[14]    See Bates No. SCDC000062-000120, attached to Defendants' Memorandum.

[15]    *Id.*

Page 15 of 25

injuries, to the extent they exist at all, are nothing more than de minimis. Therefore, it is recommended that the Defendants be granted summary judgment on the Plaintiff's Eighth Amendment claims.

### D. The Plaintiff cannot show that his placement in administrative segregation was unconstitutional.

The Plaintiff further contends that his due process rights were violated because he was confined "in segregation without being served the proper forms."[16] However, the Plaintiff does not have any constitutional claim relating to his classification for custody purposes, and therefore it is recommended that the Defendants be granted summary judgment with respect to this claim.

Federal Courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonnell*, 418 U.S. at 558-62. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975); 694 F. Supp. 184, 18 7 (E.D.Va. 1988) (collecting cases). The placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 & n. 1 (4th Cir.1984)(collecting cases).

Neither South Carolina law not the due process clause creates a liberty interest in an

---

[16]     Complaint [1] at p. 2.

inmate of the South Carolina Department of Corrections remaining in a particular section of a

prison. *See, e.g., Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992) (*citing Meachum v. Fano*,

427 U.S. 215 (1976)); *see also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978) (Blatt, J.).

In fact, it is well settled that the placement of inmates into administrative segregation units or

similar units is a valid means of minimizing a "threat to security of the institution, threat to the

safety of other residents or Jail staff, etc." *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D.Md.

1991); *see Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less

amenable and more restrictive quarters for nonpunitive reasons is well within the terms of

confinement ordinarily contemplated by a prison sentence."); *see also Montanye v. Haymes*, 427

U.S. 236, 242 (1976)(if a prisoner's confinement is within terms of the sentence imposed upon

him and does not violate other constitutional provisions, "the Due Process Clause does not in

itself subject an inmate's treatment by prison authorities to judicial oversight").

    Therefore, the court concludes that the Plaintiff's classification and placement at Lee CI

did not violate the Plaintiff's federally guaranteed constitutional rights or his rights under South

Carolina law.  It is recommended that the Defendants be granted summary judgment on the

Plaintiff's claim that his placement into administrative segregation was unconstitutional.



### E.  The Plaintiff has no constitutional right to have any inmate grievance system at the place where he is incarcerated.

    To the extent that Plaintiff complains about the inmate grievance procedure at LCI, these

allegations fail to state a viable cause of action under 42 U.S.C. § 1983.  It is well settled that

prison inmates do not possess any federal constitutional right to have any inmate grievance

system in operation at the place where they are incarcerated. *See, e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D.Va. 1994). Furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees. *See Mann*. As a result, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under Section 1983. *Id. (citing Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D.Mo. 1986) *and Azeez v. DeRobertis*, 568 F. Supp. 8, 9-11 (N.D.Ill. 1982)). Thus, to the extent that Plaintiff attempts to establish a cause of action relating to the grievance procedure at LCI, this claim fails as a matter of law, and the Defendants are also entitled to summary judgment in their favor for this reason.

### F.  The Defendants are entitled to Eleventh Amendment immunity from suit.



The Defendants are also immune from suit by virtue of the Eleventh Amendment to the United States Constitution and because they are not "persons" subject to suit under 42 U.S.C. § 1983.  When a Defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  In *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court analyzed the interplay between Section 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [citations omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the Court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. *Will*, 491 U.S. at 70. In reaching this conclusion, the Court recognized that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. As such, State officials may only be sued in their individual capacities.

Not only has the State of South Carolina failed to consent to this suit, but the General Assembly of South Carolina has unequivocally expressed its intent that the State and its agencies not be subject to suit in federal court. The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 et seq., makes state agencies subject to suit in state court under specified circumstances, but specifically provides: "Nothing in this chapter is [to be] construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States[.]" S.C. Code § 15-78-20(e).

Moreover, Congress has not overridden the state's immunity from suit under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Similarly, a state or its alter ego is not even defined as a "person" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Because a suit against the Defendants is in essence a suit against the State of South Carolina, the individual Defendants are considered, in their official capacity, to be the alter ego of the State of South Carolina and are immune from suit for all claims under § 1983. Therefore, summary judgment in favor of the Defendants is also appropriate on this basis.

### G. The Defendant Johnson is immune from suit by virtue of the doctrine of qualified immunity.

Even if this court were to find that the Defendants' actions were not constitutional (which it emphatically does not), they are still entitled to the protections of qualified immunity and summary judgment in their favor. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). To avoid "excessive disruption of government," a qualified immunity is recognized to protect government officials performing discretionary functions from civil damage suits "insofar as [the officials'] conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Officials lose the protection of the immunity if they violate a constitutional or statutory right of the Plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the Defendants' position would have known of it. *See Id.*



In *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992), the Fourth Circuit Court of Appeals summarized the requirements for qualified immunity to apply:

> Ruling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation

the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate the right.

The degree of knowledge of the law imputed to government officials is that imputable generally to a reasonable official. *Porterfield v. Lott*, 156 F.3d 563 (4th Cir. 1998). Accordingly, "all but the plainly incompetent or those who knowingly violate the law" are protected. *Id.* (*citing Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). In this same light, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Therefore, if no constitutional right is transgressed, the analysis ends, because government officials could not have known of a right that does not exist. *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996). Viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff fails to present any evidence that the Defendants knowingly violated the law or were plainly incompetent.

## H.  The doctrines of vicarious liability and respondeat superior are not applicable in cases brought pursuant to 42 U.S.C. § 1983.

To the extent that Plaintiff attempts to assert claims against these Defendants in any supervisory capacity, those claims also are subject to summary dismissal. It is well settled that the doctrines of vicarious liability and respondeat superior are not applicable in cases brought pursuant to 42 U.S.C. § 1983. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-929 (4th Cir. 1977); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (Section 1983 will not support a claim on a respondeat superior theory of liability) (*citing Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). Section 1983 liability on the part of a supervisory defendant requires a showing that

the supervisory defendant tacitly authorized or was indifferent to the subordinate's actions which

violated constitutional rights. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990).

In this case, Plaintiff has failed to allege or show any authorization or indifference to any

violation of his constitutional rights. Consequently, none of the Defendants can be held liable

under Section 1983 as a supervisor.

### I.  The Plaintiff's claims are precluded by the holding in *Heck v. Humphrey*.

The Plaintiff's claims are also precluded by the United States Supreme Court holding in

*Heck v. Humphrey*,512 U.S. 477 (1994), wherein the Supreme Court held that where a prisoner

files an action under § 1983 which would necessarily implicate the validity of his conviction, he

may not pursue the damages claim unless and until he successfully attacks the conviction on

which his suit is based.  The court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or
> for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a §
> 1983 plaintiff must prove that the conviction or sentence has been reversed on direct
> appeal, expunged by executive order, declared invalid by a state tribunal authorized to
> make such a determination, or called into question by a federal court's issuance of a writ
> of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a
> conviction or sentence that has not been so invalidated is not cognizable under § 1983.
> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity
> of his conviction or sentence; if it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.*
> at 487.

Plaintiff's allegations in this case are barred pursuant to *Heck* because they would

necessarily implicate his institutional conviction for possession of unlawful drugs, a conviction

which was based upon the Plaintiff's admission of guilt.  The record reflects that the Plaintiff

was placed in administrative segregation because of his plea of guilty to the institutional drug

charge and for obvious security concerns.  No genuine issue of material fact exists in this regard.

To now allow the Plaintiff to seek damages for his placement into administrative segregation

would necessarily imply the invalidity of the institutional drug conviction.

**J.  The Plaintiff's claims against Defendants D. Mitchell and John Doe should be dismissed because service of process has not occurred.**

The Defendants John Doe and Danna (Donna) Mitchell have never been properly served

with a copy of the Summons and Complaint in this case.  With respect to Defendant Mitchell, an

unexecuted summons was returned as not served.  [25]  Similarly, no summons has ever been

returned as executed upon Defendant John Doe.  For this reason, summary judgment in favor of

Defendants D. Mitchell and John Doe is recommended.

**K.  State Law Claims.**

To the extent that Plaintiff's complaint can be read to assert additional claims under state

law, it is recommended that the court decline to exercise supplemental jurisdiction of those



claims, as it is recommended that summary judgment be granted to the Defendants on the

Plaintiff's federal claims as set forth above.  *See* 28 U.S.C. 1367(c).

**L.  This Action Should be Deemed a Strike**.

Lastly, Section 804 of the PLRA, which amended § 1915(g), reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.28 U.S.C. § 1915(g).

The instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA. Therefore, it is recommended that it be counted as a "strike" against the Plaintiff. *See* 28 U.S.C. § 1915A.

## CONCLUSION

As the evidence of record shows that there is no genuine issue as to any material fact, it is recommended that summary judgment be entered for the Defendants. *See* Fed. R. Civ. P. 56(c).

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Defendants' motion for summary judgment **[33] should be granted, and that a strike be imposed on the** Plaintiff pursuant to 28 U.S.C. § 1915A.

George C. Kosko

September 25, 2007
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).